## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUDITH PAPPALARDO, | ) | Civil Division |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-1360 |
| v. | ) | |
| | ) | |
| BEAUTY SYSTEMS GROUP, LLC | ) | |
| D/B/A COSMOPROF | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

AND NOW COMES Plaintiff, Judith Pappalardo, ("Plaintiff" or "Ms. Pappalardo"), by and through her undersigned counsel, and brings this Complaint seeking legal and equitable relief for age and disability discrimination, retaliation and wrongful termination against Defendant Beauty Systems Group, LLC d/b/a CosmoProf (collectively "Defendant" or "CosmoProf") in violation of the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008 (collectively the "ADA"), 42 U.S.C. § 12101 et seq., as well as pendent state law claims arising under the provisions of the laws of this Commonwealth, to wit, the Pennsylvania Human Relations Act, 42 P.S. § 951, et seq. (hereinafter referred to as "PHRA").  Further, CosmoProf interfered with Ms. Pappalardo's right to intermittent leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Ms. Pappalardo states and avers the following:

## JURISDICTION AND VENUE

1.      Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1391.  This action is authorized and instituted pursuant to the ADA, FMLA, and the PHRA.

2.      Pursuant to 28 U.S.C. § 1367(a), The United States District Court for the Western District of Pennsylvania has supplemental jurisdiction over Ms. Pappalardo's PHRA claim, which

arises from the case and/or controversy as the aforementioned claims, for which this Court has original jurisdiction.

3.      The unlawful employment practices and wrongful termination were committed by the CosmoProf, where Plaintiff worked as a Store Manager at CosmoProf's McIntyre Square location (in Allegheny County, Pennsylvania).  Therefore, the United States District Court for the Western District of Pennsylvania is the proper venue for the action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §1391(b).

4.      Plaintiff timely exhausted her administrative remedies by filing a charge against Defendant on November 3, 2020 jointly with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") at 530-2021-00218. Plaintiff's PHRC and EEOC Charges are incorporated by reference as if fully set forth herein.  On August 3, 2021, the EEOC mailed Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue" letter), advising her of the right to bring this action.  Plaintiff has filed the instant suit within 90 days of receipt of the Right to Sue letter.

5.      At all relevant times hereto, CosmoProf was an employer within the meaning of the ADA, FMLA and PHRA.

## PARTIES

6.      Judith Pappalardo is a 61-year-old female individual who resides at 2926 Marshall Road, Pittsburgh, Pennsylvania 15214.

7.      Upon information and belief, at all relevant times hereto, Beauty Systems Group, LLC d/b/a CosmoProf is and was a limited liability company incorporated in Virginia and operating under the laws and within the Commonwealth of Pennsylvania.

## FACTS

8.      Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

9.      Ms. Pappalardo began working for CosmoProf nineteen (19) years ago.

10.     Ms. Pappalardo worked her way up to becoming a Store Manager and was in the position of Store Manager at the time of her firing.

11.     Throughout her time with CosmoProf, Ms. Pappalardo completed her responsibilities in a satisfactory manner, never having received a letter of discipline or written reprimand.

12.     Ms. Pappalardo received regular praise and positive evaluations from her supervisors until Lisa Miller became her immediate supervisor as her District Manager.

13.     At all times relevant herein, Ms. Pappalardo was a qualified individual under the Americans with Disabilities Act as she suffered from depression (exacerbated by the death of her mother) and a severely swollen leg and foot for which she was attempting to obtain a diagnosis at the time of her firing.[1]

14.     Ms. Pappalardo had the skill, experience, education, and other job-related requirements as Store Manager; and she could perform the job's essential functions with or without an accommodation, evidenced by her nineteen (19) years with the Company.

15.     In or around July of 2020, Ms. Miller was sending an email to CosmoProf's Regional Manager (Larry Kress) when she accidentally copied the entire district (including Ms. Pappalardo).

---

1.      Ultimately, Ms. Pappalardo learned her swollen leg and foot were likely caused by her severe osteoarthritis and hamstring tendinitis after several diagnostic tests were conducted by various specialists to rule out other causes.

16.    The email contained an inappropriate remark about Ms. Pappalardo's performance, comparing a manager in Altoona to Ms. Pappalardo, stating "also reminds me a lot of Judy was a previous Schoeneman person, *excuses*, etc." See **Exhibit 1.**

17.    Because Ms. Pappalardo did not understand what this meant and why Ms. Miller was seemingly speaking poorly of her, she emailed her asking her to discuss.

18.    Ms. Miller responded, "I will call you Wed. to discuss but how many hours have you been using.  Do you carry Freeplay lightener.  I received a customer complain[t] on this and the condition of the store, etc.  When do you have triple coverage on Wed that you can speak?"

19.    Ms. Pappalardo told Ms. Miller when she was free and Ms. Miller never called.

20.    Ms. Pappalardo believed Ms. Miller was targeting her due to her disabilities, because she referenced "excuses" in her mail to Larry Kress which Ms. Pappalardo interpreted to mean requested time off for her various doctors' appointments.

21.    As such, Ms. Pappalardo properly reported the incident on July 16, 2020, through the CosmoProf EthicsPoint system.  See **Exhibit 2.**

22.    The very next day (July 17, 2020) Ms. Pappalardo was put on performance improvement plan ("PIP") in retaliation for her protected report.

23.    During their conversation, Ms. Miller pointed to Ms. Pappalardo's swollen leg and asked *what's going on there?"*

24.    Ms. Pappalardo informed her that she did not yet have a diagnosis, but that she was working with her doctor to identify the correct specialist for diagnosis and treatment and, in the interim, she was ordered to attend physical therapy.

25.    During this visit and in a follow-up email, Ms. Miller informed Ms. Pappalardo she could no longer make doctor's appointments on Mondays or Wednesdays, despite previously

allowing her to do so and even though Ms. Miller did not mandate shift hours for other non-disabled Store Managers.  See **Exhibit 3.**

26.     Ms. Pappalardo provided Ms. Miller and Human Resources with her rebuttal to the PIP, outlining all the inaccuracies contained therein, and indicating that she believes she was being targeted.  See **Exhibit 4.**

27.     Ms. Pappalardo again reached out through the EthicsPoint system on July 22 2020, indicating that she as being targeted; harassed; and retaliated against.

28.     She noted that she has multiple medical issues and that she needs to keep her appointments as her doctor's advise.  See **Exhibit 2** and **Exhibit 5**.

29.     Again, Ms. Pappalardo received no response or assistance from Human Resources/EthicsPoint.

30.     Instead, she received a message on July 30, 2020, thanking her for her follow-up message and advising that they appreciate her patience while an investigation is conducted. See **Exhibit 2.**

31.     Ms. Pappalardo followed up on July 30, 2020, indicating that she has not heard anything from Human Resources and her harassment was continuing.  *Id.*

32.     On July 31, 2020, Ms. Pappalardo followed-up with Human Resources indicating that she has a medical issue that needs to be addressed and that due to Ms. Miller not allowing her to have doctor's appointments on Mondays or Wednesdays, her required treatment is not possible. *Id.*

33.     Ms. Pappalardo continued to try to advise Ms. Miller that she had medical issues that needed to be immediately addressed and that her physicians are not always available on her days off.

Case 2:21-cv-01360-DSC   Document 1   Filed 10/12/21   Page 6 of 15


34.     Over the next few months, Ms. Pappalardo continued to request accommodations for her disability and to express her need for intermittent FMLA and CosmoProf continued to ignore her, refusing to engage in the interactive process and interfering with her FMLA rights.

35.      Instead, Ms. Miller continued to ignore Ms. Pappalardo and harass her about menial issues with the store.

36.     On September 22, 2020, Ms. Pappalardo spoke with Larry Kress (Regional Manager) who called to ask why Ms. Pappalardo was placing orders.  She explained that she did not realize they were not to order, and he told her this had been the policy since March.  Ms. Pappalardo apologized and indicated that there were six other stores who were also ordering and must have missed this directive.

37.     Ms. Pappalardo confessed to Mr. Kress that she has been having issues with depression which she believes may be affecting her memory, again attempting to engage the Company in the interactive process after Ms. Miller and Human Resources ignored her.

38.     Ms. Pappalardo discussed her medical issues with Mr. Kress in detail, and her need to be off work, which was being ignored by CosmoProf. She further told Mr. Kress that there was a grief support group on Wednesdays that she wished to attend to assist in coping with her mother's death and her depression.  Mr. Kress promised to look into it and promised to support her as a Store Manager.

39.     The very next day (September 23, 2020) after discussing her disability and request for an accommodation with her Regional Manager, Ms. Pappalardo was fired.

40.     A pretextual reason was provided for Ms. Pappalardo's firing which was that the back door was left open in violation of store policy.  This was because Assistant Manager in

training (Carrie Landis) was working in her workbook with a brick holding the door open. At all times, the door was being attended to by a CosmoProf team member.

41.     Notably, on July 17, 2020, when Ms. Miller visited the store, the same door was propped open because Carrie was outside eating lunch. Ms. Miller did not discipline either individual or so much as comment that this amounted to any type of violation.

42.     Ms. Miller later commented to other CosmoProf employees that she had Loss Prevention watching the store for any potential violation, indicating a discriminatory and retaliatory intent to terminate Ms. Pappalardo.

43.     Ms. Miller also discussed a surgery another manager was having, that day, not only violating that individual's right privacy but showing her bias towards those who suffer from disabilities or require protected leaves of absence.

44.     Upon information and belief, Ms. Pappalardo was replaced with a non-disabled individual younger than forty (40).

45.     At no time prior to her illegal firing was Ms. Pappalardo contacted by Human Resources or anyone from EthicsPoint to discuss her complaints of discrimination, her need for an accommodation and/or protected leave or the retaliation she faced.

46.     Similarly, she never received the results of the "investigation" that was being conducted.

47.     At all times relevant hereto, Defendant was an employer within the meaning of and subject to anti-discrimination and anti-retaliation statutes.

48.     Plaintiff is in a protected class under the ADA and PHRA at the time the acts of discrimination and retaliation occurred.

49.     At all relevant times hereto, Defendant acted or failed to act by and through its duly authorized agents, servants, and employees, who conducted themselves within the scope and course of their employment.

**COUNT I**
**Actual and/or Perceived Disability Discrimination in Violation of the Americans With Disabilities Act and Amendments thereto ("ADA")**

50.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

51.     Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA because she has, or had at all times relevant hereto, a physical impairment that substantially limited/limits one or more major life activities, or because she had a record of such impairment.

52.     Plaintiff also is a "qualified individual with a disability" as that term is defined in the ADA because she was regarded as and/or perceived by Defendant and their agents as having a physical and/or mental impairment that substantially limited/limits one or more major life activities.

53.     Specifically, Plaintiff suffers from depression (which was exacerbated following her mother's death in October of 2019) and severe osteoarthritis.

54.     At all relevant times, including prior to Plaintiff's termination, Defendant was aware of Plaintiff's medical condition and Plaintiff's record of having such impairments.

55.     Plaintiff was able to perform the essential functions of her job duties with Defendant with or without reasonable accommodation.

56.     Defendant unlawfully and intentionally discriminated against Plaintiff because of her actual and/or perceived disabilities by treating Plaintiff less favorably than similarly situated

employees concerning the terms, conditions and privileges of her employment, including, without limitation:

    a. Giving Plaintiff a "Performance Improvement Plan" after Plaintiff asked to speak with her supervisor (Ms. Miller) following Ms. Miller's inadvertent transmission of an email suggesting Plaintiff was full of excuses (perceived to be related to her medical conditions) ;

    b. Failing to engage Plaintiff in the interactive process and provide her with the requested accommodation of not being forced to work on Mondays or Wednesdays when doctor's appointments needed to be scheduled for these days;

    c. Criticizing, suspending and/or terminating Plaintiff for conduct that Defendant did not criticize, suspend or terminate Plaintiff's non-disabled comparators;

    d.  Retaliating against Plaintiff for repeatedly requesting an accommodation and complaining of discrimination, retaliation and harassment;

    e.  and terminating Plaintiff's employment.

57.    Plaintiff's disability and/or Defendants' perception that Plaintiff was disabled was the motivating factor in Defendant's decisions to subject Plaintiff to the above-described disparate treatment and to terminate Plaintiff's employment.

58.    The effect of the practices complained of in the paragraphs above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of Plaintiff's actual or perceived disability.

59.    Defendant's above-described conduct was intentional.

60.    Defendant's above-described conduct was willful, wanton and malicious and showed complete indifference to or conscious disregard for the rights of Plaintiff, justifying an

award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from engaging in the same conduct in the future.

61.     As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment and inconvenience, and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**Interference and Retaliation in Violation of the**
**Americans With Disabilities Act and Amendments thereto "ADA")**

62.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

63.     Plaintiff is a member of a protected class because of her actual disability and/or because she was regarded as being disabled, and because she had a reasonable, good faith belief that she was engaging in protected activity by attempting to exercise her rights under the ADA and requesting a reasonable accommodation associated with her medical condition.

64.     On multiple occasions, as outlined-above, Plaintiff made a request for a reasonable accommodation related to her actual and/or perceived disabilities.  In doing so, Plaintiff was attempting to exercise her rights and engaging in protected activity under the ADA.

65.     Defendant interfered with Plaintiff's attempt to exercise her right to a reasonable accommodation under the ADA and retaliated against Plaintiff because she engaged in the above-described protected activity by treating Plaintiff less favorably than similarly situated employees

concerning the conditions and privileges of her employment as described above and in the previous Count.

66.     A casual connection exists between Plaintiff's protected activities and Defendant's materially adverse actions, i.e., Defendant interfered with Plaintiff's rights under the ADA, retaliated against her and ultimately discharged her because she repeatedly requested a reasonable accommodation related to her actual and/or perceived disabilities and continued to attempt to progress her request/complaint after Defendant ignored the same.

67.     Defendant's above-described conduct was intentional.

68.     Defendant's above-described conduct was willful, wanton and malicious and showed complete indifference to or conscious disregard for the rights of Plaintiff, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from engaging in the same conduct in the future.

69.     As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment and inconvenience, and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

WHEREFORE, Plaintiff seeks the damages set forth in the ad damnum clause of this Complaint, infra.

**COUNT III**
**Discrimination and Retaliation under the Pennsylvania Human Rights Act ("PHRA")**

70.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

71.     This is an action arising under the provisions of the laws of the PHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause

of action set forth in this COUNT III arises out of the same facts, events and circumstances as in the above COUNTS I AND II, and therefore judicial economy and fairness dictate that this COUNT II be brought in this same Complaint.

72.     At all times relevant, Defendant was an "employer" within the meaning of Section 954(b) of the PHRA.

73.     By engaging in the creation and fostering of a discriminatory and retaliatory environment based on Ms. Pappalardo's disabilities and/or perceived disabilities, Defendant violated those sections of the PHRA which prohibits discrimination and retaliation based upon disability regarding the continuation and tenure of employment.

74.     Defendant knew or should have known about the discriminatory and retaliatory conduct to which Plaintiff was subjected and failed to take appropriate remedial action.

75.     Defendant's failure to maintain a workplace free of discrimination and retaliation and the failure to take prompt remedial action were intentional, malicious and in reckless indifference to Plaintiff's protected state rights.

76.     Plaintiff engaged in a protected activity as described by the PHRA, which includes the opposition of any practice forbidden by the PHRA, including making multiple complaints of discrimination regarding her disability; advising Defendant verbally and in writing of her disability but capability to complete the job functions with reasonable accommodation; and advising Defendant that she was being retaliated against for making a protected complaint of discrimination.

77.      Defendant was aware of Plaintiff's protected activity yet retaliated against her. Ms. Pappalardo was fired from a position for which she was qualified and could perform with reasonable accommodation and, upon information and belief, filling the position with a less qualified, non-disabled individual.

78.     Defendant's discriminatory and retaliatory conduct towards and wrongful termination of Plaintiff as a result of her engaging in a protected activity remains a violation of the PHRA.

79.     Defendant's above-described conduct was intentional.

80.     Defendant's above-described conduct was willful, wanton and malicious and showed complete indifference to or conscious disregard for the rights of Plaintiff, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from engaging in the same conduct in the future.

81.     As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment and inconvenience, and she is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT IV

## Interference and Retaliation in Violation of the Family Medical Leave Act ("FMLA")

82.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

83.     The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by the FMLA.

84.     Plaintiff is an eligible employee under the FMLA, and Defendant is a covered employer within the meaning of the FMLA.

85.     After putting Defendant on notice in July, August and September of 2020 of Plaintiff's medical conditions and after putting in a request for leave on Mondays and Wednesdays,

Defendant's representatives did not engage int eh interactive process with Plaintiff to discuss Plaintiff's need for leave under the FMLA.

86.     At no time did Defendant discuss with Plaintiff whether her medical conditions were the type that necessitated FMLA leave, or intermittent FMLA leave, even though Plaintiff had advised Defendant's representatives that she had medical conditions that caused her to periodically miss work and/or that rendered her unable to accomplish her job functions.

87.     In not engaging with Plaintiff, Defendant's representatives caused her additional stress and anxiety.  She continued to worry about whether he was going to get penalized for attending doctors appointments and physical therapy appointments

88.     Plaintiff's additional concerns would have been eliminated if Defendant's representatives had worked with her to confirm her need for FMLA.

89.     Defendant interfered with, restrained and denied Plaintiff's exercise, and attempted exercise, of her rights pursuant to the FMLA.

90.     Upon information and belief, Plaintiff was then terminated because Defendant's anticipated her use of leave under the FMLA, after she had requested Mondays and Wednesdays off on multiple occasions.

91.     Such interference with Plaintiff's rights under the FMLA has caused serious damage to Plaintiff, and she is entitled to all damages authorized by 29 U.S.C. §2617, including lost wages and benefits, interest, liquidated damages, attorneys' fees, expenses and equitable relief.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## DEMAND FOR JURY

WHEREFORE, Plaintiff demands judgment against Defendant, and damages in excess of $75,000 as follows:

a.  That Plaintiff be awarded actual and consequential damages to make Plaintiff whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendant's discrimination, retaliation and wrongful termination of Plaintiff pursuant to the ADA, FMLA and PHRA plus interest;

b.  That Plaintiff be awarded economic and compensatory damages to compensate for all costs associated with the discrimination and retaliation including lost wages and medical expenses;

c.  That Plaintiff be awarded nominal damages;

d.  That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendant for its intentional, wanton and malicious conduct and to deter similar misconduct;

e.  That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees; and

f.  That Plaintiff be awarded such further relief as deemed to be just and proper.

Date:   10/12/21                          Respectfully Submitted,


                                          */s/ Stephanie L. Solomon*
                                          Stephanie L. Solomon, Esquire
                                          Pa. I.D. 208056
                                          HKM EMPLOYMENT ATTORNEYS LLP
                                          220 Grant Street
                                          Suite 401
                                          Pittsburgh, PA  15219
                                          412.760.7802
                                          ssolomon@hkm.com

                                          **JURY TRIAL DEMANDED**

15